Thank you, Counsel. I'll call the next case. Jupiter Wreck v. Unidentified Wrecked & Abandoned Vessel And we have just Mr. Horan here for Jupiter Wreck. Good morning. Good morning, Mr. Horan. It pleased the Court, David Paul Horan appearing for the Appellant Salver, Jupiter Wreck. The reason there's no applee is that the Supreme Court is consistent on the operation of the Eleventh Amendment. Quote, the State cannot have it both ways. It is either in the suit as a claimant subjecting its rights to decision or else it is out of the suit altogether. Deep Sea Research . . . Unless the Court requires the State to respond to an order. Absolutely. And that's all the State does and that's all the State did in this case, right? That's correct. Okay. They responded to my request for a status conference. And they said we're only entering for the purpose of responding to an order of the Court, period. Right. They were not making a claim. Okay. All right. So they can't be brought into the lawsuit for any other purpose? No. Couldn't be. There's no claim, 30 years, no claim has ever been made. The case was filed before the Federal Abandoned Shipwreck Act conveyed federal title. It claimed federal title and then conveyed the federal title to the individual States. Since this action was filed back in July of 87, the State of Florida has maintained that the 11th Amendment immunity prohibits the Admiralty Court from taking jurisdiction and protecting ongoing federal salvage activities. In 1987, Jupiter Rec moved for a preliminary injunction to stop the arrest of Jupiter Rec's officers and employees and the confiscation of vessels and artifacts. Rather than making a claim, the State filed a limited appearance and the Court held that due to the 11th Amendment prohibition, unless the State consented to Admiralty Court jurisdiction, Jupiter Rec had no possibility of claiming title against the State. The 1988 opinion held that unless the State appeared and waived its 11th Amendment immunity, the Admiralty Court did not have the power to enjoin the State's interference with salvage or adjudicate the State's interest. So what exactly are you seeking in this case? You're asking, you asked the Court to strike the State's pleadings unless they consent to suit? That's correct. The issue was this, the State... Yeah, the State said, we're not consenting to suit, we're just responding to an order of the Court. That's right. And they said specifically, we are not subjecting ourselves to the jurisdiction of this Court, number one. And number two, we're not making a claim. And they never have. So they're just making a limited appearance for the purpose of responding to a court order. That's correct. And you... The attachment that they made to that limited appearance was a research and recovery contract that goes back years and years. And the Court below said that research and recovery contract specifically conveys title to the State. Now, the whole idea... And what's wrong with honoring that? What's wrong with honoring that agreement? Honoring it? Yeah. That agreement was a settlement with the State. That agreement was entered for one purpose and one purpose only. Everybody recognized back then, we're going back years, that the Federal Court would be adjudicating title against the world. And that's the way... By the way, that's exactly what the Court did in Deep Sea Research. But what the issue was is the division of the recovery after the Court had adjudicated title. In other words, we turn over every year, we turn over and we're the substitute custodian, Jupiter Rex substitute custodian. You turn over all the artifacts that you recovered that year. There's a publication that goes out. Anybody that has an interest in these artifacts come forward and intervene and make your claim. At the end of that, the Court adjudicates title against the world. The research and recovery contract that we entered into gave the State 20% and gave us 80% after the Court had adjudicated title. Until before... Sounds like a good deal. What? Sounds like a good deal for your client. Oh, no question. Well, we were able in many cases and other cases also to make that 20% a donation. Everybody's happy about that. But in this particular case, what we did was we said we will give you 20%. But we get the adjudication in our name and then 20% of that goes to you. You see, the whole idea about this case is that we didn't have anything we could give the State until such time as there is a recovery and it's in the substitute custodian's hand. This is a... It's a matter between you and the State. You're entering into a private agreement with the State of Florida. Private agreement. An agreement. It didn't have anything to do... An agreement with the State of Florida. It was an agreement. Only on how we would divide after we had been adjudicated the owner. So, you want title to the vessel itself. That's what you're seeking. No. What are you seeking? Only the title to what is recovered each year. You can't get title to the vessel that hadn't been recovered. The substitute custodian holds what is brought up. In order to do that, you've got to bring the State into the litigation. No. If I go and try to bring the State into the litigation, what's their defense? Well, it's the 11th Amendment of Immunity. Yeah.  Oh, the State turned around and said, listen, we're going to, again, after 30 years, we're going to arrest your people and we're going to confiscate the boats and we're going to take the treasure. So, you want to re-litigate a prior issue that's already been litigated? No. They actually said, we are going to start arresting you unless you agree to sign these contracts. When did that happen? When did that first happen? The only time that there was a case that was right for adjudication by this court was this year when the judge, or last year, when the judge ruled that the State owned the wreck and had control over the wreck. And that was a mistake. If you look at the decision, there is... All right, I'm confused now. Let's see what you're appealing. You're appealing, what exactly are you appealing? The order from last year, which is the order that says that the State owns the wreck because of the research and recovery agreement. You have the date. That's the order that you've appealed from? Yes. That denied the status conference? That's right. Why would we reopen that? I mean, that agreement's been in place for a long time, and a lot of people have relied on it. Say that again? Why would we reopen that? People have relied on that agreement for a long time, and heck, your client benefited from initial rulings by Judge Marcus saying that the only two people with interests were your client and the State. For all we know, if we reopen this, there will be an insurance company that comes out of the woodwork, and there will be lots of other people. So it seems to me quite dangerous to reopen all this stuff. The only reason to reopen it was that the State, after 30 years, changed and said, we will not recognize the authority of the federal court to adjudicate title and to protect ongoing salvage. And they wanted us to sign a totally different . . . I mean, the State of Florida, I'm not an expert on the State of Florida, but I'm going to bet you can bring a breach of contract claim in state court against the State of Florida. Well, it would be . . . I think I'm right about that. So bring a breach of contract claim against the State of Florida. But, see, it's an admiralty claim. It's in rem admiralty. If they've waived their rights to . . . I know they can be sued for breach of contract. Sure. So if they can, sue them. That would be under the Savings Suitors Clause. However, look at the February 1996 Magistrate Report. Here's what it says, direct quote. Until title is adjudicated, no party can have a legal interest in the defendant vessel or item salvaged therefrom, period. The interest of the substitute custodian is that of the court, and the State of Florida's interest created pursuant to the research and recovery contract with Jupiter Rec is merely a beneficial interest pending a final adjudication of title. And that is a direct quote. Now, if you look at Docket Entry Number 44, there was an agreement between us and the State of Florida on a suspension because you don't want a case against a sitting judge that's thirty years old. It just kind of runs off all the warning bells. It's too old. So you do a suspension. We agreed to that suspension. What did we agree? We agreed that they would get twenty percent, we get eighty percent. I'm going to go back to my original question. You're appealing the denial of your request to strike the State's pleadings unless they consent . . . unless they waive their Eleventh Amendment immunity, right? That's the order that's being appealed from in this case. You move for a status conference. I am appealing on this basis. Is that what you're appealing though, the denial of your request to strike the State's pleadings? Because you want to bring the State into this case, right? But the State . . . Actually, I don't want the State involved in this case. The Eleventh Amendment is not an offensive weapon. It's a shield. And the entire basis for the Eleventh Amendment is to protect the fisk of the State. We're not erading that. We've got to decide if we enter a . . . we write an opinion. Our opinion will affirm or reverse the district court's denial of your request to strike the State's pleadings. Is that what we're here to resolve this morning? I believe that your decision may very well be exactly what the Supreme Court in the 9-0 decision in Deep Sea Research said. And that is the Eleventh Amendment has nothing whatsoever to do with an interim salvage case, period. That's what it says, 9-0. Matter of fact, there were specially concurring opinions that emphasize that fact. So the answer to my question is yes, you're trying to bring the State into this case. I'm only wanting the State to, if they want to go ahead and in any way participate in the salvage that has been going on for thirty years, they have to come in under the rule and make a claim. They refused to do that. In every other case that I've got, they came in. Frazier-Salvers, Jupiter-Reck, I mean 1715, all of those times they came in. In this case, they never came in, said we do not recognize the authority of the federal district court to adjudicate the claim. Let me tell you what the fear is . . . We would have to re-litigate that issue that's already been litigated before. No, it really hasn't because what the judge said in his order that's on appeal is there's been no change in the controlling authority. Well, it looks like in 2012 you moved for injunctive relief and to reopen the case and that was denied. Is that right? To reopen the case, yes. And that was denied. And did you argue at that time the 1998 case of deep sea research to the court? That was not argued. The case at that point was whether the court had jurisdiction. However, we were still working with the state. The one thing that you don't want to do to the state is kick them in the head. I mean you just don't want to do that. What you want to do is be as nice as you possibly can and try to work with them because they can cause all kinds of problems. And we continued to salvage. There have been over 20,000 artifacts salvaged. Maybe it's because I'm from Ohio that I'm the one that's interested in this. But what's left? I mean you've been salvaging this thing for several decades. Is there anything still there? I'll give you an example. About 25 miles above where Jupiter Inlet is is where the 1715 fleet sank in July of 1715. This is a big wind up. I just wanted to know how much was there. Last year they blew one hole in an area about as big as that desk, recovered 406 gold coins worth $4 million. One of the coins was a quarter of a million dollars. And we're talking about the same wreck? It's a wreck just like Jupiter wreck, yes. And we know from our recoveries that it came in at a certain angle. We know that. And then we applied to the court to extend the wreck site. The court granted that extension. And that's where it kind of tumbles as it comes into the beach. And that's where everything is found. The issue, I believe, is that until there is an adjudication of title, Jupiter wreck never had anything it could convey to the state of Florida. Nothing. There's no reason for the appellee 30-year refusal to make any claim. The state has continued to attempt to hide behind. There's no appellee. We don't have an appellee. Right. The state has attempted. I'm feeling kind of lonely up here. The state's attempted to hide behind the shield of the 11th Amendment. Which they're entitled to do. They're entitled to do that. That's what the 11th Amendment immunity is all about. That's correct. And the 11th Amendment is a shield against an attack we never attacked. I'm having a hard time. What attack? What's the attack? Judge Wilson, it's not an offensive weapon. And they're using it as an offensive weapon. They say we can come in without ever making an appearance or acknowledging the jurisdiction of the federal district court. We can come in and arrest those salvers for doing something which is specifically allowed by the federal district court in Admiralty. They're saying we're only coming in because we're responding to an order of the court to come in. We're making a limited appearance because we're responding to an order. We're not going to ignore the court order. We're going to respond to the court order of the court. That's all the state's doing, right? No, they actually went further than that. They actually, by attaching the research and recovery agreement, the court then used that limited appearance to say that the state had made a claim and that the state owns it. That was a just absolute total mistake because until such time as the court adjudicates title, we don't have anything we can convey. All right. We'll figure it all out. Thank you, Mr. Horan. Thank you, Your Honor. I'm sure glad that it's not an EEOC case. I was totally lost on that.